UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

STEPHANIE SIMONS,                   )
                                    )
       Plaintiff,                   )
                                    )
   v.                               )   No. 06 C 50134
                                    )
FREEPORT MEMORIAL HOSPITAL          )
and FREEPORT HEALTH NETWORK,        )
                                    )
       Defendants.                  )

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

I. BACKGROUND

On May 4, 2007, plaintiff, Stephanie Simons, filed her three-count, second-amended complaint against defendants, Freeport Memorial Hospital and Freeport Health Network, alleging medical malpractice and breach of contract. In her complaint, plaintiff alleges, in part, that while undergoing physical therapy rendered by the defendants through their agent, Kirby Price, her left arm and shoulder were overextended causing severe and permanent damage to her left shoulder. Defendants have filed a motion to disqualify plaintiff's expert witness, Leah Crull, and to disqualify plaintiff's attorney and his firm.

According to the affidavit of defense counsel, Lisa Munch, in August 2007, defense counsel began discussions with Leah Crull, an occupational therapist, about serving as a consultant for defendants on this case. On September 18, 2007, counsel confirmed this relationship in a letter to Crull, thanking her for agreeing to act as a consultant on behalf of the defendants. In that letter, Munch also noted that she was sending Crull several medical records to review. According to

Munch, she spoke with Crull over the phone on three separate occasions, and at some point decided that the defendants would not use Crull as an expert witness. During their conversations, Munch disclosed to Crull the opinions of her other consultant, and discussed in detail "how those opinions would strategically fit within the defense of the occupational therapy care as well as the defense of the case globally." Munch and Crull also discussed "strategic viewpoints as to the specifics of care," and in doing so, Munch disclosed to Crull "some of the information" that Munch received from defendants. Munch avers that she and Crull discussed "how the defense would benefit from specific strengths from defense perspective and weaknesses of the plaintiff's case in great detail." In addition to their phone conversations, Munch and Crull also sent several e-mails back and forth about scheduling times to speak, and Munch sent Crull more medical records on September 24, 2007. As a result of her consultation, Crull was paid over $4000 by defense counsel for over twenty hours of service. According to the invoices submitted, Crull was last paid by defense counsel for a phone consultation with Munch that occurred on November 19, 2007.

In April 2008, plaintiff filed her Federal Rule of Civil Procedure 26(a)(2) disclosures, and therein disclosed that she intended to use Crull as an expert witness in her case, and included a two-page report by Crull, dated February 28, 2008. The report contained Crull's opinion that the treatment plaintiff received did not meet the standard of care. According to the affidavit of plaintiff's counsel, Kevin J. Frost, Frost contacted David Black of Orthopedic Rehab Specialists on February 15, 2008 and was referred to Crull. On February 18, 2008, Frost contacted Crull by phone to see if she would be interested in serving as an expert witness in the case. On February 20, 2008, Frost delivered the records to Crull. Only then did Crull tell Frost that she already had reviewed medical records and spoke with an attorney at Hinshaw & Culbertson about this matter. Crull also

informed Frost that she was no longer doing any further consulting for the attorney at Hinshaw & Culbertson on this matter or any other matter. Frost attests that after February 20, 2008, he had no further conversations with Crull. On February 28, 2008, Crull provided Frost with her written report. According to Frost, no other attorney at his office has had any communications with Crull regarding this litigation. Frost states that Crull never discussed with him any of the aspects of the defense of this suit contained in Munch's affidavit.[1]

The facts asserted by Munch and Frost in their affidavits are largely undisputed.[2] However, the parties greatly disagree as to the effect of Crull's involvement with both parties. Defendants argue that both Crull, and the entire firm of Clark, Justen & Zucchi must be disqualified because Crull maintained a confidential consultative relationship with defendants, and received confidential and privileged attorney work product information from defense counsel. Plaintiff responds that neither Crull, nor the firm of Clark, Justen & Zucchi should be disqualified because defendants have not shown, beyond vague and conclusory assertions, that confidential information was shared with Crull or Frost.

---

[1]Frost's affidavit is consistent with plaintiff's response to defendants' request for any correspondence plaintiff or plaintiff's counsel had with Crull. In response to defendants' request, plaintiff submitted a February 20, 2008 letter to Crull from plaintiff's counsel thanking Crull for agreeing to review plaintiff's records and identifying the documents to be reviewed, a February 28, 2008 report by Crull stating her opinion that plaintiff's treatment did not meet the standard of care, and Crull's resume.

[2]Plaintiff initially argued that there was no evidence defendants shared confidential information with Crull. However, after Munch's affidavit was filed, plaintiff has not challenged any of the facts asserted by Munch. In the same way, the factual shortcomings defendants pointed out in Frost's initial affidavit were addressed by his second affidavit. Overall, although both parties continue to challenge the legal conclusions Munch and Frost made in their respective affidavits, neither side disputes the affirmative facts asserted. Thus, this court finds no need for a hearing on this matter.

3

## II. DISCUSSION

### A. Disqualification of Crull

Neither the Supreme Court nor the Seventh Circuit have adopted a standard for determining whether an expert should be disqualified on the basis of conflict. However, many federal courts have recognized that they have inherent power to disqualify experts on the basis of the expert's past relationship with an adversary in the litigation. See Am. Empire Surplus Lines Ins. Co. v. Care Ctrs., Inc., 484 F. Supp. 2d 855, 856-57 (N.D. Ill. 2007) (citing Koch Refining Co. v. Jennifer L. Boudreaux M/V, 85 F.3d 1178, 1181 (5th Cir. 1996)); Chamberlain Group, Inc. v. Interlogix, Inc., No. 01 C 6157, 2002 WL 653893, at *2 (N.D. Ill. Apr. 19, 2002); Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 277-78 (S.D. Ohio 1988). Using this power, district courts in this Circuit have applied a two-part test to determine whether an expert should be disqualified. See Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc., No. 05 C 4088, 2008 WL 4542948, at *1 (N.D. Ill. Aug. 15, 2008); BP Amoco Chem. Co. v. Flint Hills Res., LLC, 500 F. Supp. 2d 957, 960 (N.D. Ill. 2007); Am. Empire, 484 F. Supp. 2d at 857; Chamberlain, 2002 WL 653893, at *2; Great Lakes Dredge & Dock Co. v. Harnischfeger Corp., 734 F. Supp. 334, 337 (N.D. Ill. 1990). First, the party seeking disqualification must show it acted reasonably in assuming that a confidential relationship with the expert existed. BP Amoco, 500 F. Supp. 2d at 960. Next, the movant must show it exchanged confidential information with the expert. Id. Generally, if the movant fails to prove either of these factors, disqualification is not warranted. Id. However, some courts have also considered, as a third factor, the court's interest in protecting and preserving the integrity and fairness of the judicial proceedings. Am. Empire, 484 F. Supp. 2d at 857; Great Lakes, 734 F. Supp. at 337; see also Koch, 85 F.3d at 1181. This factor has been used to override the other two where

necessary. See Am. Empire, 484 F. Supp. 2d at 857 (holding that although confidential information was not exchanged, public confidence in the integrity and fairness of the judicial process merits disqualification of the expert).

Disqualification is a "drastic measure" that should not be used except when it is absolutely necessary. BP Amoco, 500 F. Supp. 2d at 960 (quotation marks omitted). As a result, the party seeking disqualification has the "heavy burden" of showing the existence of a confidential relationship and the transmission of confidential information. Id. Furthermore, the party requesting disqualification may not meet its burden with conclusory assertions. Id. (citing Green, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D. 426, 429 (E.D. Pa. 2001)).

1. Confidential Relationship

The first inquiry is whether defendants' attorneys acted reasonably in assuming that a confidential relationship with Crull existed. In contrast to plaintiff's suggestions otherwise, a written contract is not the only way a party can reasonably assume a confidential relationship with an expert. Great Lakes, 734 F. Supp. at 336. Rather, "[i]n certain circumstances it might be reasonable for an attorney or party to communicate confidential or privileged information to an expert in the absence of a formal contract." Id. Thus, instead of focusing on a contract between the party and the expert, courts consider several other factors to determine if the party's expectation of a confidential relationship with a consulted expert is reasonable, these include: whether either party or the expert acknowledged that the expert was retained, the amount and nature of the documents that the party sent the expert, how much time the expert provided to the party, whether payment was made to the expert, and whether the expert rendered an opinion to the party. See Larson v. Rourick, 284 F. Supp. 2d 1155, 1158 (N.D. Iowa 2003); Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 581

5

(D.N.J. 1994); Mayer v. Dell, 139 F.R.D. 1, 3 (D.D.C. 1991); Wang Labs., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1249 (E.D. Va. 1991). If these factors indicate that the parties had a "longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operations, decision-making process, and the like," then a party's assumption of confidentiality is reasonable. Koch, 85 F.3d at 1182 (alterations and quotation marks omitted). However, where "the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services," there is no long-term relationship, but rather an informal consultation. Id. (quotation marks omitted).

In this case, defendants' assumption of a confidential relationship with Crull was reasonable. Munch's initial letter to Crull acknowledges that Crull agreed to work as a consultant on behalf of the defendants. This relationship was further acknowledged by Crull in her e-mails to Munch in which she stated that she reviewed the doctor's notes and report sent by Munch, and was ready to discuss her notes. The e-mails and other correspondence between Crull and Munch also indicate that Crull continued to provide consultation to defendants even after an initial review of the medical records in the case. Compare Larson, 284 F. Supp. 2d at 1158 (finding that the relationship between expert and attorney was only an initial consultation where the expert made an initial review of documents and quickly decided he would not serve as the plaintiff's expert). In e-mails exchanged between October 4-8, 2007, Crull and Munch arranged a time to discuss the initial documents sent to Crull. Thereafter, on October 31, 2007, Munch sent Crull additional documents for review, and her consultation continued. Throughout her consultation for defendants, Crull received many

documents involving the case, including a series of plaintiff's medical records, plaintiff's occupational therapy records and the deposition transcripts of Kirby Price.

In addition, during her consultation for defendants, Crull billed over twenty hours, for which she was paid over $4000. Although it is not completely clear, Munch's affidavit indicates that during those twenty hours Crull rendered some type of oral opinion. Plaintiff points out that Crull did not give a <u>written</u> opinion. However, that is not of great weight here. The form of the opinion, whether oral or written is not of much significance, rather, the fact that an opinion was rendered by the expert to a party reflects the nature and depth of the relationship. <u>See</u> <u>Cordy</u>, 156 F.R.D. at 582.

In light of the facts stated above, it was reasonable for defendants to assume a confidential relationship with Crull. Although defendants' attorney's relationship with Crull lasted only three months, Crull's service to defendants was much more than an initial consultation. This is evidenced by the fact Crull continued to provide her opinion to defendants even after an initial review of the records. Crull invested significant time reviewing plaintiff's medical records and was paid by defendants accordingly. Crull also spent significant time discussing the case with Munch. As a result, it would be reasonable for defendants to assume they had entered a confidential relationship with Crull. Therefore, the first question is answered in the affirmative.

## 2. Confidential Information

The closer issue in this case is whether confidential information was exchanged between defendants' attorneys and Crull. Defendants argue that their discussions with Crull involved the disclosure of theories and strategies of the case that constitute attorney work product. Defendants do not present any written communications with Crull that include such information. This leaves

7

only Munch's affidavit to show confidential information was exchanged. Munch's description of her conversations with Crull is as follows:

  a.  I disclosed to [Crull] the opinions of my other consultant and we discussed in detail how those opinions would strategically fit within the defense of the occupational therapy care as well as the defense of the case globally;

  b.  I discussed strategic viewpoints with her as to the specifics of the care at issue, questioning her opinions and thoughts from each and every aspect, of which some of the information had been received from Defendants and shared with permission of Defendants for consultative purpose; and,

  c.  We discussed how the defense would benefit from specific strengths from defense perspective [sic] and weaknesses of the plaintiff's case in great detail. [T]herefore, in doing so, I shared with her my attorney impressions and whether I agreed or disagreed with her thoughts, thus discussing with her all my attorney work product in the preparation of the defense of this case.
. . .

A lawyer's thoughts about a potential suit that include the strengths and weaknesses of the case as well as her legal theories, mental impressions and opinions are generally considered attorney work product that is afforded heightened protection and not subject to discovery. See <u>Mattenson v. Baxter Healthcare Corp.</u>, 438 F.3d 763, 767-68 (7th Cir. 2006); <u>Logan v. Commercial Union Ins. Co.</u>, 96 F.3d 971, 976 n.4 (7th Cir. 1996). As such, courts that have reviewed the disqualification of an expert have held that when this type of opinion work product is shared by an attorney, confidential information has been imparted to the expert. See <u>Koch</u>, 85 F.3d at 1182; <u>Cordy</u>, 156 F.R.D. at 581; <u>Paul</u>, 123 F.R.D. at 280; <u>see also</u> <u>BP Amoco</u>, 500 F. Supp. 2d at 962 (inferring that information subject to attorney-client or the work product doctrines would be confidential information that would require disqualification).

Defendants argue that Munch's affidavit demonstrates that Munch's protected work product was shared with Crull and that, therefore, confidential information was shared. However, this is

8

hardly clear. Munch makes a variety of vague assertions that do not detail any of her exchanges with Crull. For example, Munch states several times that she and Crull "discussed" subjects, like, how other experts opinions would fit into the defense, "strategic viewpoints" and how the defense would benefit from "specific strengths from defense perspective." It is difficult to discern whether Munch asked Crull her opinions, which Crull then shared, or if Munch also shared her opinions with Crull.

Munch concludes in paragraph c. that she shared her attorney impressions and discussed all of her attorney work product. However, several courts have held that a party requesting disqualification may not meet its burden with conclusory assertions. See BP Amoco, 500 F. Supp. 2d at 961 (holding that the assertions that confidential information was transmitted were vague and conclusory assertions); Green, Tweed, 202 F.R.D. at 430 (finding that the defendant could not support its burden "by making conclusory assertions that the proposed experts were 'privy to substantial confidential information related'" to the litigation); Mayer, 139 F.R.D. at 4. In fact, courts have required additional evidence to support such broad assertions and self-serving remarks in attorneys' affidavits. See Rosenthal Collins Group, 2008 WL 4542948, at *2; Mayer, 139 F.R.D. at 4. (finding that plaintiff's counsel's affidavit, stating that he discussed with the expert strategy in the litigation, the kinds of experts he expected to retain, his views of the strengths and weaknesses of each side, and the role of plaintiff's experts, was not, in itself, enough to find confidential information was exchanged).

More problematic is that neither side has provided the court with Crull's recollection of her exchange with Munch. Plaintiff noted in its response that it would not contact Crull to provide an affidavit without leave of court. Nor was such an affidavit necessary at the time plaintiff filed her

9

response because defendants had not yet filed Munch's affidavit. Because defendants failed to attach Munch's affidavit until their reply, plaintiff was left with little opportunity to respond to it. Moreover, defendants did not include any of Munch's notes or further information from Crull. Thus, defendants have provided little specific information to support their burden to show that confidential information was exchanged with Crull.

### 3. Policy Considerations

However, even if this court were to conclude that defendants have not met their burden to show confidential information was exchanged, the third overriding factor requires that Crull be disqualified. Courts have an obligation to protect and preserve the integrity of the judicial proceedings before them. Am. Empire, 484 F. Supp. 2d at 857; Great Lakes, 734 F. Supp. at 337. "The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process." Koch, 85 F.3d at1182 (quotation marks omitted). Courts have most readily disqualified experts where, as here, the expert switched sides in the same litigation. See Chamberlain Group, 2002 WL 653893, at *5; Cordy, 156 F.R.D. at 580-81. In fact, several courts have acknowledged that the prospect of an expert switching sides in the midst of litigation is unfair and challenges the integrity of the judicial process. See Am. Empire, 484 F. Supp. 2d at 857 (holding that even where no confidential information is exchanged disqualification is necessary where dual involvement of the expert "appears unfair and unseemly"); Wang Labs., 762 F. Supp. at 1248 ("To be sure, no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention."); Cordy, 156 F.R.D. at 582

(holding that a party to a lawsuit who retains an expert should not have to worry that the expert will change sides in the middle of the proceeding, and witness assistance in litigation should not be sold to the highest bidder).

This case is one that requires expert disqualification in order to preserve the integrity of both the litigation at hand and the entire judicial process. Although defendants have not definitively shown that they shared confidential information with Crull, defendants' attorneys established an ongoing relationship with Crull in which she shared her thoughts and opinions about the case at bar. This was not merely an initial interview, but an extended consultation in which she spoke with defense counsel about the case for approximately two hours. In addition, although Munch's affidavit does not indicate exactly what Munch shared with Crull, it is apparent from Munch's statements that, at the very least, Crull shared her opinions about the strength and weaknesses of the current litigation and aided Munch in constructing her views on the defense of the case and the weaknesses of the plaintiff's case. This information in itself could potentially cause plaintiff to have a tremendous advantage.

Moreover, this court cannot condone the practice of a party continuing to utilize the services of an expert, without any notice to the other party, after learning that the expert has done significant work for the other party. Here, plaintiff made no attempt to notify defendants once plaintiff's counsel learned of Crull's previous relationship with defendants. Thus, plaintiff did not give defendants an immediate opportunity to object before continuing her relationship with Crull. Where there are plenty of possible experts on an issue in the litigation, parties should not be able to capitalize on the work an expert provided to another party, or garner another party's possible strategies from a rejected expert.

This decision imposes little prejudice on plaintiff. "The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. . . . Accordingly, courts have considered whether another expert is available and whether the opposing party had time to hire him or her before trial." Koch, 85 F.3d at 1183. In this case, plaintiff has not indicated that she is unable to find another expert in occupational therapy, and this does not appear to be a rare or exceptionally uncommon field. This court will also allow plaintiff additional time to find and disclose such an expert if plaintiff so requests. There is also no indication that defendants' attorneys had an improper motive to consult Crull in order to prevent plaintiff from using her as an expert witness. See Wang Labs., 762 F. Supp. at 1248. Accordingly, the court finds that its obligation to maintain the integrity of the judicial process dictates Crull be disqualified as an expert for plaintiff.

## B. Disqualification of Frost and Clark, Justen & Zucchi

These policy considerations do not, however, require that plaintiff's attorney or his firm be disqualified.[3] Disqualification of counsel "as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing." Freeman v. Chi. Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982). "[S]uch motions should

---

[3]A standard similar to disqualifying experts has been applied to disqualifying attorneys: "[I]f the court concludes that the asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, it should take appropriate measures, including disqualification, to eliminate such taint." MMR/ Wallace Power & Indus., Inc. v . Thames Assocs., 764 F. Supp. 712, 718 (D. Conn. 1991).

be viewed with extreme caution." Id. at 722. The professional rules of conduct, as set forth in the Northern District of Illinois Local Rules, generally govern motions to disqualify counsel. Tokh v. Water Tower Court Homeowners Ass'n, No. 06 C 0489, 2006 WL 1648442, at *3 (N.D. Ill. June 12, 2006) (citing Andrew Corp. v. Beverly Mfg. Co., 415 F. Supp. 2d 919, 923 (N.D. Ill. 2006)). However, neither party cites any of these rules, and it appears none are on point in this case.

Rather, defendants cite two cases to support their argument that Frost and his firm should be disqualified: MMR/Wallace Power Industrial, Inc. v. Thames Associates, 764 F. Supp. 712 ( D. Conn 1991) and Cordy, 156 F.R.D. at 583-85. In MMR, the defendant's attorney hired a former employee of the plaintiff as a consultant for the defendant. 764 F. Supp. at 714-15. The MMR court adopted a three-part test, akin to that used when an attorney switches sides in litigation, see Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983), to determine whether a party's attorney should be disqualified for his association with the other party's employee, which asked: (1) whether the employee had confidential or privileged information pertaining to the movant's trial strategy, (2) whether the employee disclosed that information to the nonmovant attorney, and (3) whether such information threatened to taint all further proceedings. MMR, 764 F. Supp. at 724.[4] The MMR court then answered all three inquiries in the affirmative, and disqualified defense counsel. Id. at 725-27. The Cordy court extended the test in MMR to an attorney's relationship with an expert

---

[4] As to the second element of this test, the MMR court found that there is a presumption in favor of the movant that the employee had shared confidential information with the nonmovant's attorney. 764 F. Supp. at 726. This is consistent with Seventh Circuit law on attorney disqualification, which requires a nonmovant to rebut the presumption that he or she shared confidences with respect to prior representation. Kapco Mfg. Co., Inc. v. C & O Enters., Inc., 637 F. Supp. 1231, 1237 (N.D. Ill. 1985).

13

previously retained by an opposing party, and thereby, disqualified the attorney and law firm involved in that case. Cordy, 156 F.R.D. at 583-84.

Based on MMR and Cordy, defendants argue that Frost and his firm should be disqualified. However, unlike the parties in MMR and Cordy, defendants in this case have failed to definitively demonstrate even the first requirement of the test adopted in MMR, and followed in Cordy. As discussed above, defendants have not presented evidence that clearly shows that Munch shared any confidential information with Crull.[5] As a result, it would be even more speculative to presume Frost and his firm received this confidential information.

In regard to the second requirement, Frost has submitted two affidavits to the court to rebut any presumption that Crull shared confidential information with him. Frost avers that he spoke with Crull briefly on February 18, 2008, to arrange dropping off some records, and then spoke to Crull again on February 20, 2008. At that time, Frost learned Crull had reviewed some records in the case for defendants, but was no longer consulting for them. After that time, Frost never had any further conversations with Crull, except to receive her written report on February 28, 2008. Frost states that Crull never provided him with any confidential information or documents she may have obtained from defense counsel, or any information other than that provided in Crull's report. Frost also avers that no other attorney in his firm has spoken with Crull. Although, again, the court has

---

[5]In fact, in both Cordy and MMR and, the courts had additional evidence, other than the opposing party's attorney's deposition to show that confidential information was shared. See Cordy, 156 F.R.D. at 581; MMR, 764 F. Supp. at 725 n.20. In Cordy, the plaintiff had shown the defendant's expert a binder, which, the court concluded after review contained "clearly confidential" information. 156 F.R.D. at 581. Similarly, in MMR, the court reviewed a number of materials in camera, which indicated the expert had input on the plaintiff's interrogatories, had possession of inter-office memoranda discussing litigation-related matters, and had prepared confidential reports for the plaintiff addressing matters in litigation. 764 F. Supp. at 725 n.20.

14

no affidavit from Crull, "[u]ncontroverted affidavits are sufficient rebuttal evidence." Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205, 17 F.3d 1059, 1065 (7th Cir. 1994).[6] It is defendants' ultimate burden of persuasion, and defendants present nothing to contradict Frost's affidavits. See Kapco Mfg. Co., Inc. v. C&O Enters., Inc., 637 F. Supp. 1231, 1238 (N.D. Ill. 1985). Therefore, even if the court had to proceed to the second step of the analysis, this step also weighs against defendants.[7]

Finally, as to the third element, defendants have not presented enough facts for the court to determine whether it would taint all further proceedings if Crull shared her discussions with defense counsel with plaintiff. Munch's affidavit does not specify what information was shared. As such, without knowing what that specific information was, this court cannot determine how or if Frost's knowledge of such information would damage the integrity of the litigation.

---

[6]Defendants encourage this court to follow Cordy. However, although the Cordy court cites MMR, it appears that the Cordy court found the presumption that confidences are shared is irrefutable rather than rebuttable. Cordy, 156 F.R.D. at 584. In contrast, in cases involving disqualification of an attorney, the Seventh Circuit allows the nonmovant to rebut the presumption that the confidences were shared. See Cromley, 17 F.3d at 1066; Kapco, 637 F. Supp. at 1237 (citing Schiessle, 717 F.2d at 420 n.2). Defendants concede as much in their reply brief.

[7]In Schiessle, the Seventh Circuit held that the evidence presented to rebut the presumption that confidences were shared must "clearly and effectively demonstrate that the attorney in question had no knowledge of the information . . . ." 717 F.2d at 420 (quotation marks omitted). Defendants argue Frost's initial affidavit did not clearly demonstrate he or his firm had no knowledge of confidential information shared with Crull because it was unclear whether other members of the firm had communications with Crull. However, Frost's second affidavit addresses these concerns. In Kapco, similar testimony was accepted as enough to rebut a presumption that confidences of an opposing party were shared with an attorney. 637 F. Supp. at 1239 (relying on uncontradicted testimony of the defendants' attorney that neither he nor anyone else at his firm to his knowledge received the plaintiff's confidential information); see also Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C., No. 03 C 760, 2003 WL 22872142, at *6 (N.D. Ill. Dec. 3, 2003) (finding on the basis of their affidavits, that some of plaintiffs' attorneys did not receive any confidential information from an employee of the defendant).

As a result, defendants' motion to disqualify Frost and his firm is denied.

ENTER:

_____
FREDERICK J. KAPALA
District Judge

Date: December 4, 2008